612 F.2d 1064
 CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE, a Delaware
Corporation, Appellee,
v.
Raymond KASSEL, Individually and in his capacity as Director
of Transportation; Robert Rigler, Individually and in his
capacity as a member and Chairman of the Transportation
Commission; L. Stanley Schoelerman, Individually and in his
capacity as a member of the Transportation Commission;
Donald Gardner, Individually and in his capacity as a member
of the Transportation Commission; Jules Busker, Individually
and in his capacity as a member of the Transportation
Commission, Allan Thoms, Individually and in his capacity as
a member of the Transportation Commission; Barbara Dunn,
Individually and in her capacity as a member of the
Transportation Commission; William McGrath, Individually and
in his capacity as a member of the Transportation
Commission; Jon McCoy, Individually and in his capacity as
Director of the Motor Vehicle Division; Charles W. Larson,
Individually and in his capacity as Commissioner of the
Department of Safety; Edward Dickinson, Individually and in
his capacity as Chief of the Iowa Highway Patrol; Richard C.
Turner, Individually and in his capacity as Attorney
General; and Robert D. Ray, Individually and in his capacity
as Governor, Appellants,
Motor Club of Iowa, Intervenor-Appellant.
 No. 79-1709.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 11, 1979.
Decided Dec. 7, 1979.
 
 Brent Appel, First Asst. Atty. Gen., Dept. of Transp., Des Moines, Iowa, for appellants; Lester A. Paff, Asst. Atty. Gen., Ames, Iowa, co-counsel, on brief.
 John H. Lederer, DeWitt, McAndrews & Sundby, S. C., Madison, Wis., for appellee; John Duncan Varda and Anthony R. Varda, Madison, Wis., and Terry C. Hancock, Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, Iowa, on brief.
 Before LAY, HEANEY and HENLEY, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 The sole issue on appeal is whether the trial court[1] erred in holding that an Iowa law barring the use of trucks longer than sixty feet on Iowa's interstate highways unconstitutionally burdened interstate commerce. Since we find that this case cannot be meaningfully distinguished from Raymond Motor Transportation, Inc. v. Rice, 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978), we affirm.
 
 
 2
 Consolidated Freightways Corporation of Delaware is a regular route common carrier of general commodities operating in forty-eight states under a Certificate of Public Convenience and Necessity issued by the Interstate Commerce Commission. Its business consists primarily of consolidating and transferring small shipments from one location to another by truck. To move these goods, Consolidated operates a variety of tractor-trailer combinations of which the sixty-five-foot combination of a tractor and two trailers (sixty-five-foot twins) has become the most common.
 
 
 3
 Iowa law[2] prohibits the use of sixty-five-foot twins on its highways although it allows sixty-foot twins and fifty-five-foot semis (a combination of a tractor and a forty-five-foot trailer).[3] The sixty-foot twins are not an industry standard and are used primarily in states that prohibit the longer trailers.
 
 
 4
 Two major interstate highways, I-80 and I-35, cross Iowa. I-80 is a principal east-west transcontinental route and is heavily used in the shipment of goods between the two coasts. Sixty-five-foot twins are permitted on the entire length of I-80 except in the states of Pennsylvania, New Jersey and Iowa. I-35 is a principal north-south route linking Minnesota to Texas. Sixty-five-foot twins are lawful on the entire length of I-35 except in Iowa. As a result of Iowa's prohibition on sixty-five-foot twins, Consolidated (1) diverts its sixty-five-foot twins off of the interstate system and on to longer routes around the state, (2) shuttles its twin trailers across the state individually, and (3) uses sixty-foot twins and fifty-five-foot semis in the state.
 
 
 5
 Consolidated brought this action claiming that the prohibition on the use of sixty-five-foot twins on Iowa's interstate highways is an unconstitutional burden on interstate commerce. It also alleges that statutory and administrative exceptions to Iowa's general limitation discriminate against interstate commerce in favor of local interests. It sought, and the district court granted, injunctive relief preventing the enforcement of Iowa's law as applied to sixty-five-foot twins on Iowa's interstate highways.[4] The court also enjoined enforcement of the Iowa law on roads furnishing reasonable access between the interstates and Consolidated's terminals and facilities for food, fuel, repairs or rest. This appeal followed.
 
 I.
 
 6
 In granting relief, the district court relied on Raymond Motor Transportation, Inc. v. Rice, supra. In Raymond, Consolidated and another common carrier challenged Wisconsin's general prohibition on trucks longer than fifty-five feet. The case was tried to a three-judge district court on affidavits, depositions and exhibits. That court upheld the law as a valid state safety regulation. In reversing, the Supreme Court noted that the trucking interests had "produced uncontradicted evidence showing that their operations are disrupted, their costs are raised, and their service is slowed by the challenged regulations." Id. at 438, 98 S.Ct. at 792. These disruptions and added expenses included shuttling twin trailers in and out of the state, diverting its long east-west routes around the state, and using fifty-five-foot semis rather than sixty-five-foot twins on Wisconsin routes between Chicago and Minneapolis. Id. The Court also noted that the truckers had "presented a great deal of evidence supporting their allegation that 65-foot doubles are as safe as, if not safer than, 55-foot singles when operated on limited-access, four-lane divided highways." 434 U.S. at 436, 98 S.Ct. at 791. Wisconsin, "for reasons unexplained, made no effort to contradict this evidence of comparative safety with evidence of its own." Id. at 437, 98 S.Ct. at 792.
 
 
 7
 On the basis of this record, the Supreme Court concluded that the strong presumption of validity generally attaching to state highway safety regulations was rebutted. The Court stated:
 
 
 8
 On this record, we are persuaded that the challenged regulations violate the Commerce Clause because they place a substantial burden on interstate commerce and they cannot be said to make more than the most speculative contribution to highway safety. Our holding is a narrow one, for we do not decide whether laws of other States restricting the operation of trucks over 55 feet long, or of double-trailer trucks, would be upheld if the evidence produced on the safety issue were not so overwhelmingly one-sided as in this case.
 
 
 9
 Id. at 447, 98 S.Ct. at 797 (footnote deleted).
 
 
 10
 The similarities between the instant case and Raymond are manifest. The primary difference, however, is that Iowa, unlike Wisconsin, zealously presented arguments concerning two major issues in the case: the interference with interstate commerce and the safety advantages of its regulation. Additionally, it augmented the customary safety argument that sixty-five-foot twins were in some respects less safe than other truck configurations by attempting to show that the regulation promoted safety by reducing the amount of traffic crossing the state. Despite these efforts, the district court concluded that (1) the state law interferred with interstate commerce, (2) "(t)he evidence convincingly, if not overwhelmingly, establishes that the 65 foot twin is as safe as, if not safer than, the 60 foot twin and the 55 foot semi," 475 F.Supp. at 548, and (3) even given the local benefits derived by diversion of traffic around the state, the "Total effect of the law as a safety measure * * * is so slight and problematical that it does not outweigh the national interest." Id. at 551 (emphasis in original).
 
 II.
 
 11
 Iowa presents two significant contentions on appeal. The first relates to the district court's analysis of the evidence regarding the safety features of the sixty-five-foot twin as compared with other truck configurations. The second concerns the district court's analysis of the argument that, by prohibiting traffic that might otherwise flow through the state, Iowa's law promotes legitimate local safety interests.
 
 A.
 
 12
 Iowa first argues that the district court erred in substituting its judgment for that of the Iowa State Legislature in determining whether sixty-five-foot twins are safe enough for Iowa's interstate highways. Iowa contends that, instead of making a finding as to the relative safety of the sixty-five-foot twin and the sixty-foot twin or fifty-five-foot semi, the district court should have merely probed the factual dispute with an eye toward determining whether the state's safety justification was "arguable" or "colorable."[5] If any "colorable" or "arguable" safety justification exists, Iowa argues, Raymond requires that the regulation be presumed valid when weighed against its alleged burden on interstate commerce.
 
 
 13
 We cannot accept either Iowa's reading of Raymond or its characterization of the district court's treatment of the factual issue before it. First, in Raymond, the Supreme Court did not suggest that any state regulation supported by a "colorable" safety claim is to be cloaked with the presumption of validity ordinarily attaching to legitimate safety regulations. The Court held, rather, that when a burdensome regulation cannot, on the record, "be said to make more than the most speculative contribution to highway safety," Raymond Motor Transportation, Inc. v. Rice, supra at 447, 98 S.Ct. at 797, it is unconstitutional. It did not authorize courts to substitute their judgments for those of the state legislatures, but directed them only to examine the evidence to see whether reputed safety justifications are substantive, not "illusory." See id. at 449, 98 S.Ct. 787 (Blackmun, J., concurring).
 
 
 14
 Second, the district court did exactly what Raymond charged it to do; it examined the record to determine whether the reputed safety justification was substantive. It did not, as Iowa contends, usurp the function of the state legislature in balancing policies. Rather, it simply determined, on the record before it, that the asserted connection between the prohibition of the sixty-five-foot vehicle and a reasonable concern with its safety was illusory. It made a specific finding that "(t)he evidence convincingly, if not overwhelmingly, establishes that the 65 foot twin is as safe as, if not safer than, the 60 foot twin and the 55 foot semi." 475 F.Supp. at 548. Thus, there is no safety justification (based on the truck itself as distinguished from the traffic flow of which it is a part) for the prohibition of sixty-five-foot twins unless the district court's factual finding was clearly erroneous.
 
 
 15
 After our own review of the record, we cannot say that the district court's finding as to the safety of the sixty-five-foot twin was clearly erroneous. Significantly, even Iowa does not appear to contend that the district court's Overall assessment of the safety of sixty-five-foot twins was erroneous. Rather, using the legal standard that we have here rejected, it contends that a "colorable" argument was made regarding the safety aspects of its regulation through evidence that various characteristics of the sixty-five-foot twin are less advantageous than the corresponding characteristics of the fifty-five-foot semi or the sixty-foot twin. The district court, however, specifically addressed the issue of differing characteristics as follows:
 
 
 16
 Twins and semis have different characteristics. Twins are more maneuverable, are less sensitive to wind, and create less splash and spray. However, they are more likely than semis to jackknife or upset. They can be backed only for a short distance. The negative characteristics are not such that they render the twin less safe than semis overall. Semis are more stable but are more likely to "rear end" another vehicle.
 
 
 17
 The added length of the twin is not a substantial factor on four lane divided highways. The state by legalizing the 65 foot automobile carrier has weakened its claim that the extra length creates a safety hazard. It has practically destroyed its argument that double trailers are an additional safety hazard by legalizing the 60 foot twin. The uncontradicted evidence established that the extra five feet in length makes the 65 foot twin more stable than the 60 foot twin.
 
 
 18
 475 F.Supp. at 549.
 
 
 19
 The evidence concerning different characteristics supports, rather than negates, the district court's finding that overall sixty-five-foot twins are as safe or safer than the trucks Iowa currently permits. That finding, based as it is on a record replete with substantiating evidence,[6] is not clearly erroneous. Not one expert, nor any reliable study, took direct issue with it.
 
 B.
 
 20
 Iowa's second major contention is that the district court failed to give proper weight to the second prong of its safety argument. This argument, in essence, is that because the prohibition of sixty-five-foot twins reduces the traffic that might otherwise flow through Iowa, it reduces roadwear and the risk of accident to Iowa's citizens and is, therefore, a valid safety regulation. This argument recognizes the burden that Iowa law currently imposes on interstate commerce by diverting sixty-five-foot twin traffic off the interstate system, primarily on to a longer two-lane state highway in Missouri. If Iowa's law were changed, this traffic would follow the most geographically efficient route, which is I-80, through Iowa.[7]
 
 
 21
 In analyzing this safety justification for the Iowa law, the district court recognized both Iowa's safety interests and the significance of a countervailing safety interest in other states. Though Iowa's safety interest is obvious, the court noted, "it is equally clear that Iowa's length restriction causes the trucks affected by the ban to travel more miles over more dangerous roads in other states which means a greater overall exposure to accidents and fatalities." 475 F.Supp. at 550. "There is," the court continued, "a parochialism about (Iowa's) local approach to public health and safety, that gives it less weight in the balance between legitimate local concerns for the health and economic welfare of its citizens and the burden on interstate commerce. It has the aura of protectionism usually associated with discrimination against interstate commerce." Id. at 551. As a result, the court made the "delicate adjustment of the conflicting state and federal claims," Raymond Motor Transportation, Inc. v. Rice, supra at 440, 98 S.Ct. at 793 (quoting Great A&P Tea Co. v. Cottrell, 424 U.S. 366, 371, 96 S.Ct. 923, 47 L.Ed.2d 55 (1976)), in favor of the national interest in unburdened interstate commerce.
 
 
 22
 With this adjustment we can only agree. When a state regulation directly pursues a valid safety objective, some burdening of interstate commerce will be tolerated. How much is a matter of balance. See Raymond Motor Transportation, Inc. v. Rice, supra at 441, 98 S.Ct. 787. When, however, the regulation's objective accrues not directly, by prohibiting a vehicle with which there is some inherent safety problem, but indirectly, by the deflection of interstate commerce away from the state, the balancing is automatic; national interests must prevail. We caution that our holding in no way endorses a "lowest common denominator approach" to state safety regulation; it does not compel states to sacrifice legitimate safety regulations in the face of lower standards in neighboring states. We hold only that when a state advances a regulation that both burdens interstate commerce and fails to directly protect a state safety interest, that regulation must succumb to the dominate national interest.
 
 III.
 
 23
 One final reason for our affirmance concerns the cumulative effect of various exemptions from Iowa's general highway length and weight regulations. The district court considered Iowa's exceptions and concluded that they did not form an independent ground for invalidating the regulation. We note, however, that regardless of whether the challenged exceptions would themselves make out a case of unconstitutional discrimination, they may constitute a factor weakening the presumption in favor of a safety regulation. Raymond Motor Transportation, Inc. v. Rice, supra at 446, 98 S.Ct. 787. This would be so if it appears that the exceptions are "the product of compromise between forces within the State that seek to retain the State's general truck-length limit, and industries within the State that complain that the general limit is unduly burdensome." Id. at 447, 98 S.Ct. at 797.
 
 
 24
 Iowa's exceptions to its general limitations include the following:
 
 
 25
 (1) Iowa Code § 321.457(7) gives Iowa's border cities the power to adopt by ordinance the length and width limitations of the abutting state. This exception, of course, works to mitigate the local hardships imposed by the general prohibition.
 
 
 26
 (2) Iowa Code § 321.457(5) allows for the transportation of passenger vehicles, light trucks, boats and farm tractors and implements in vehicles of sixty feet with an overhang not to exceed sixty-five feet. This exception not only eases the burden of the general limitation on Iowa consumers and its agricultural community, but it undercuts Iowa's argument that sixty-five-foot twins are unsafe due to their length.
 
 
 27
 (3) Iowa Code § 321.457(3) allows for the transportation of livestock in sixty-foot semis. Other semis are limited to fifty-five feet. This exception is of undoubted assistance to Iowa's agricultural interests.
 
 
 28
 (4) The record also discloses that the Governor of Iowa has the power to proclaim a state of emergency "to protect the public peace, health and safety, and to preserve the lives and property of the people of the state." 475 F.Supp. at 553. The Governor and his agents used this power to authorize the issuance of 1,636 permits in 1977 and 2,984 permits in 1978 providing temporary exemptions from general weight limitations.
 
 
 29
 Together, these exceptions appear to work a rough "compromise between forces within the State that seek to retain the State's general truck-length limit, and industries within the State that complain that the general limit is unduly burdensome." Raymond Motor Transportation, Inc. v. Rice, supra at 447, 98 S.Ct. 787, 797. Certainly, they reduce our willingness to assume that the state's own political process serves as a check on burdensome regulations. Consequently, we consider these exemptions as another factor reducing the weight of Iowa's safety claim in the balance with national interests.
 
 
 30
 For these reasons, we affirm.
 
 
 31
 HENLEY, Circuit Judge, dubitante.
 
 
 32
 Applying a test used by Mr. Justice Powell in Raymond Motor Transportation, Inc. v. Rice, 434 U.S. 429, 98 S.Ct. 787, 64 L.Ed.2d 664 (1978), our court affirms a finding of violation of the commerce clause. Given the manifest similarities between the instant case and Raymond, it may well be that affirmance is in order. Even so, it is at least questionable whether the Supreme Court requires a balancing of the burden on interstate commerce against putative local benefits. Id. at 441-42, 98 S.Ct. 787. This uncertainty stems from the fact that the Supreme Court may have enunciated three or more distinct tests for determining whether a state statute unconstitutionally burdens interstate commerce.
 
 
 33
 In Brotherhood of Locomotive Firemen & Enginemen v. Chicago, R.I. & P. R. Co., 393 U.S. 129, 89 S.Ct. 323, 21 L.Ed.2d 289 (1968), the Court set out what may be called a "deferential" test to determine the legitimacy of a state statute burdening interstate commerce. In Brotherhood, a group of interstate railroads operating in Arkansas sought declaratory and injunctive relief claiming in part that Arkansas laws requiring a minimum train crew for certain conditions of railroad operation violated the commerce clause. The Supreme Court, in a seven-one decision, held that the district court erred in striking down the "full crew" laws as violative of the commerce clause because it had "indulged in a legislative judgment wholly beyond its limited authority to review state legislation under the Commerce Clause." Id. at 136, 89 S.Ct. at 327. The Court noted that the question of safety is clearly one for legislative determination and "(t)he District Court's responsibility for making 'findings of fact' certainly does not authorize it to resolve conflicts in the evidence against the legislature's conclusion or even to reject the legislative judgment on the basis that . . . the legislative viewpoint constitutes nothing more than . . . 'pure speculation.' " Id. at 138-39, 89 S.Ct. at 328.
 
 
 34
 In Raymond Motor Transportation, Inc. v. Rice, supra, the Court again faced the question of whether a state statute or regulation inhibiting the conveyance of goods in interstate commerce was unconstitutional under commerce clause analysis. The case involved a Wisconsin statute which disallowed trucks longer than fifty-five feet or pulling more than one vehicle to operate on Wisconsin highways without a permit. Regulations implementing the statute set forth the various conditions under which permits would be granted. The Court held that the challenged regulations violated the commerce clause because they substantially burdened interstate commerce and the state had failed to make even a colorable showing that the regulations contributed to highway safety.
 
 
 35
 The Court, however, may have divided somewhat on the proper test for commerce clause analysis. In the opinion for the Court Mr. Justice Powell, relying on Pike v. Bruce Church, Inc., 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), appeared to approve balancing the burden on interstate commerce against the putative local benefits. Because the Wisconsin regulations were "clearly excessive in relation to the putative local benefits," Raymond Motor Transportation, Inc. v. Rice, supra, 434 U.S. at 442, 98 S.Ct. at 794 (Citing Pike v. Bruce Church, Inc., supra, 397 U.S. at 143, 90 S.Ct. 844), Mr. Justice Powell concluded that the regulations were an unconstitutional burden on interstate commerce.
 
 
 36
 Mr. Justice Blackmun, however, in a concurrence joined by three other justices,[1] used a different approach. Mr. Justice Blackmun noted that "if safety justifications are not illusory, the Court will not second-guess legislative judgment about their importance in comparison with related burdens on interstate commerce." Id. 434 U.S. at 449, 98 S.Ct. at 798.
 
 
 37
 Neither opinion emanating from the Raymond Court mentioned the views previously set forth by Mr. Justice Black in Brotherhood.[2]
 
 
 38
 As a member of a district court twice reversed in the Brotherhood litigation,[3] I am, of course, reluctant to reject the Brotherhood decision without specific direction or to join in interring it in an unmarked grave.
 
 
 
 [1]
 United States District Court for the Southern District of Iowa, Central Division. 475 F.Supp. 544
 
 
 [2]
 The specific law in question, Iowa Code § 321.457(6), reads as follows:
 
 
 [6]
 No combination of three (3) vehicles coupled together one of which is a motor vehicle, unladen or with load, shall have an overall length, inclusive of front and rear bumpers in excess of sixty feet
 
 
 [3]
 Illustrations of the sixty-five-foot twins and the fifty-five-foot semis can be seen at 417 F.Supp. 1352, 1363 (Raymond Motor Transportation, Inc. v. Rice, (W.D.Wis.1976))
 
 
 [4]
 In addition to I-80 and I-35, the district court enjoined enforcement on Interstate Highways 280, 380, 29, 680 and 235. I-280 is an alternative routing of I-80 in the Moline-Rock Island-Davenport metropolitan area. I-380 connects Cedar Rapids, Iowa, with I-80. I-29 is a north-south route connecting Kansas City, Missouri, with Canada. I-680 is an alternate routing of I-80 and I-29 in the Council Bluffs area. I-235 is an alternate routing of I-80 and I-35 in the Des Moines, Iowa, area
 
 
 [5]
 Iowa apparently bases its test of arguability or colorability on the following sentence in Raymond Motor Transportation, Inc. v. Rice, 434 U.S. 429, 448, 98 S.Ct. 787, 797, 54 L.Ed.2d 664 (1978): "The State of Wisconsin has failed to make even a colorable showing that its regulations contribute to highway safety."
 
 
 [6]
 The record includes the testimony of a host of experts, state and federal highway officials, insurance analysts and a variety of statistical studies. It also includes a report prepared by the Iowa Department of Transportation in April of 1975 entitled "Sixty-Five Foot Twin-Trailers on Iowa Highways: Perspective." A particularly significant conclusion of this report is that "65 foot twin trailer combinations have not been shown to be less safe than 60 foot twin trailer combinations or conventional tractor-semitrailers." Plaintiff's Exhibit 2 at 26. It also noted that sixty-five-foot twins have a better turning radius and a shorter stopping distance than do semis. In other characteristics, the report noted no difference between the two vehicles. Id
 
 
 [7]
 The 1975 report by the Iowa Department of Transportation cited in note 6 predicted that at that time, repeal would have increased Iowa highway usage by approximately 75,000 truck trips each year. Id. Current estimates are higher
 
 
 [1]
 The Chief Justice, Mr. Justice Brennan, and Mr. Justice Rehnquist joined in Mr. Justice Blackmun's concurring opinion. Mr. Justice Stevens did not participate in the decision
 
 
 [2]
 In Pike v. Bruce Church, Inc., supra, the Supreme Court also failed to mention Brotherhood. The Fifth Circuit, citing a leading commentator, G. Gunther, Cases and Material on Constitutional Law 311 (1975), suggests that the Brotherhood approach may have at least in part been implicitly rejected because of its inconsistency with recent commerce clause decisions. Great Western United Corp. v. Kidwell, 577 F.2d 1256, 1282 n.54 (5th Cir. 1978), Rev'd sub nom. Leroy v. Great Western United Corp., --- U.S. ----, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979)
 
 
 [3]
 The Brotherhood case, originally styled Chicago, R.I. & P. R. Co. v. Hardin, 239 F.Supp. 1 (W.D.Ark.1965), was brought before a three-judge court in the United States District Court for the Western District of Arkansas. That court decided the case without reaching the constitutional questions posed by the complaint. Defendants and intervenors, however, appealed to the United States Supreme Court which reversed and remanded for consideration of the constitutional questions. Brotherhood of Locomotive Eng'rs v. Chicago, R.I. & P. R. Co., 382 U.S. 423, 86 S.Ct. 594, 15 L.Ed.2d 501 (1966). On remand, the three-judge district court held that evidence presented to the court required the conclusion that continued enforcement of the Arkansas statutes violated due process and unconstitutionally burdened interstate commerce. Chicago, R.I. & P. R. Co. v. Hardin, 274 F.Supp. 294 (W.D.Ark.1967). The Supreme Court, however, again reversed, Brotherhood of Locomotive Firemen & Enginemen v. Chicago, R.I. & P. R. Co., supra