**NATIONAL TANK TRUCK CARRIERS, INC., and Ritter Transportation, Inc., Plaintiffs-Appellants,**

v.

**CITY OF NEW YORK, New York City Fire Department, and Augustus A. Beekman, Fire Commissioner, Defendants-Appellees.**

No. 810, Docket 81–7838.

United States Court of Appeals, Second Circuit.

Argued March 22, 1982.

Decided May 3, 1982.

Lawrence W. Bierlein, Washington, D. C. (Douglas E. McKeon, New York City, of counsel), for plaintiffs-appellants.

Francis F. Caputo, New York City (Frederick A. O. Schwarz, Jr., Corp. Counsel of the City of New York, Barry Schwartz, New York City, of counsel), for defendants-appellees.

Before LUMBARD and OAKES, Circuit Judges, and FRIEDMAN,* Chief Judge, Court of Claims.

OAKES, Circuit Judge:

This appeal is from a decision of the United States District Court for the Southern District of New York, Thomas P. Griesa, Judge, 515 F.Supp. 663, to the extent that it upheld New York City Fire Department regulations regarding the transportation of hazardous gases by tank truck. F.P. Directive 5–63, issued by the Division of Fire Prevention and entitled "specifications for Vehicles Transporting or Delivering Compressed Gases within the City of New York," *inter alia* prohibits the transportation of hazardous gases by tank truck with-

* Sitting by designation.

in New York City, *id.* § 10.2,[1] except when the Fire Commissioner authorizes such transportation because "no practical alternative route to passage through the city exists," *id.* § 10.4b.[2] The Fire Commissioner has authorized trucks carrying hazardous gases to travel through New York City to Long Island, but only if they conform with certain routing requirements (over the Tappan Zee Bridge, New England Thruway and Throgs Neck Bridge) and curfews (never between the rush hours of 6–10 a.m. or 3–7 p.m.).

Two actions were tried by Judge Griesa. In the first, New York City sued Ritter Transportation in the New York Supreme Court, New York County, for carrying propane illegally within city limits without a permit, after a Ritter truck leaked and stopped all traffic on the George Washington Bridge for eight hours. The state court preliminarily enjoined Ritter from transporting hazardous gases within New York City in violation of F.P. Directive 5–63; Ritter removed to the Southern District and moved to vacate the injunction. In the second action, National Tank Truck Carriers (NTTC), a trade association, and Ritter sought a declaratory judgment from the district court that the New York City regulations unconstitutionally burden interstate commerce, and are preempted by the federal Hazardous Materials Transportation Act (HMTA) and related Department of Transportation (DOT) regulations.

Judge Griesa denied Ritter's motion to vacate the injunction. *City of New York v. Ritter Transportation, Inc.*, 515 F.Supp. 663 (S.D.N.Y.1981). He found that Ritter had violated F.P. Directive 5–63, § 10.2 and § 10.4b as implemented, 515 F.Supp. at 667; that the regulations were not inconsistent with 49 C.F.R. § 177.853(a),[3] a regulation promulgated under the HMTA, with *id.* § 397.9(a),[4] a regulation promulgated under the Interstate Commerce Act, or with any other relevant federal statute or regulation, 515 F.Supp. at 671–72; and that the regulations did not impose an unconstitutional burden on interstate commerce, *id.* at 672. In the second action, by judgment entered October 13, 1981, Judge Griesa denied declaratory or injunctive relief from New York City's hazardous gas routing requirements, incorporating by reference his opinion denying Ritter's motion to vacate. He found the curfews consistent, but the truck-placard and container-testing requirements of F.P. Directive 5–63 inconsistent, with the HMTA and related regulations. He declined to rule on challenged hazard class definitions.

Ritter and NTTC appeal jointly from the judgment in the second action, challenging the ban imposed by section 10.2 and the curfews imposed under the authority of section 10.4b both as unconstitutional and as preempted by the HMTA and related DOT regulations. Appellants also argue that the hazard class definitions are preempted.

1. F.P. Directive 5–63 § 10.2 provides: "Liquefied petroleum gases; liquefied chlorine; vinyl chloride or any other gases deemed to be hazardous by the Fire Commissioner shall not be stored, transported or delivered in tank trucks within the city."

2. F.P. Directive 5–63 § 10.4b provides: "Interstate or intrastate transportation of a hazardous compressed gas, prohibited by Section 10.2 of these specifications or otherwise banned in the public interest by the Fire Commissioner, may be authorized by the Fire Commissioner, providing the vendor can show that no practical alternative route to passage through the city exists or that a critical emergency requires delivery in the city. Any truck shipments so authorized shall conform to routes, times, and safety conditions specified by the Fire Commissioner."

3. 49 C.F.R. § 177.853(a) provides: "*No unnecessary delay in movement of shipments.* All shipments of hazardous materials shall be transported without unnecessary delay, from and including the time of commencement of the loading of the cargo until its final discharge at destination."

4. 49 C.F.R. § 397.9(a) provides: "Unless there is no practicable alternative, a motor vehicle which contains hazardous materials must be operated over routes which do not go through or near heavily populated areas, places where crowds are assembled, tunnels, narrow streets, or alleys. Operating convenience is not a basis for determining whether it is practicable to operate a motor vehicle in accordance with this paragraph."

The City does not cross-appeal from the portion of the judgment invalidating the Fire Department's truck-placard and container-testing regulations. We affirm the principal rulings challenged.

■ We agree with Judge Griesa that the New York City hazardous gas routing requirements are constitutional because they "are based on a legitimate local safety interest and do not impose a disproportionate burden on interstate commerce." 515 F.Supp. at 672.

The New York regulations plainly do not have local economic protectionism as their objective; if they did, a "virtually *per se* rule of invalidity" under the Commerce Clause would apply. *See City of Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978). Rather, the regulations are directed at a legitimate local concern for public safety on the highways of a densely populated and trafficked area. They apply even-handedly both to intrastate and interstate commerce in hazardous gases. In cases involving nondiscriminatory restrictions that incidentally affect interstate commerce while serving legitimate local interests, the Supreme Court applies a balancing test, weighing the local safety interest served against the degree of interference with interstate commerce. *See, e.g., Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970) ("Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits"). The Court has made it clear that this test, not a mere rational relation test, applies to state or local regulations to promote highway safety. *See Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429, 442–43, 98 S.Ct. 787, 794–95, 54 L.Ed.2d 664 (1978). Nonetheless, "[i]n no field has ... deference to state regulation been greater than that of highway safety regulation," *id.* at 443, 98 S.Ct. at 795, and highway safety regulations enjoy a strong presumption of validity, *id.* 444 & n.18, 98 S.Ct. 795 & n.18. *See also Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 111, 69 S.Ct. 463, 466, 93 L.Ed. 533 (1949); *South Carolina State Highway Department v. Barnwell Brothers, Inc.*, 303 U.S. 177, 189, 58 S.Ct. 510, 515, 82 L.Ed. 734 (1938). Cases striking down nondiscriminatory state safety regulations for disproportionate burdens on interstate commerce are exceptional. *See Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 529, 79 S.Ct. 962, 967, 3 L.Ed.2d 1003 (1959).

The district court had before it evidence about the safety hazards of transporting compressed hazardous gases. Such hazards increase in proportion to traffic and structural density, and in particular the danger of explosion in the event of gas leakage increases with the concentration of underground cavities such as subways and sewers. Appellants on the other hand failed to demonstrate that cross-city transportation of hazardous gases was safe. This case is therefore unlike *Raymond Motor Transportation, Inc. v. Rice*, one of the rare cases striking down a state regulation for imposing a burden on commerce disproportionate to its slight and speculative contribution to local highway safety. In *Raymond Motor*, the State utterly failed to contradict extensive evidence introduced by the trucker demonstrating the comparative safety of prohibited 65-foot double rigs in relation to permitted 55-foot single rigs. *See* 434 U.S. at 436–37, 444–45, 98 S.Ct. at 795–96. *See also id.* at 447, 98 S.Ct. at 797 (decision limited to case where "the evidence produced on the safety issue" was "overwhelmingly one-sided").

■ The New York City regulations, it is true, might burden interstate commerce by increasing gas shippers' costs, *e.g.*, by making trucks travel more miles to circumvent New York City or by delaying trips to Long Island, *see id.* at 445 & n.21, 98 S.Ct. at 796 & n.21 (cost is a relevant factor), or by slowing the movement of goods in interstate commerce, *see id.* at 445, 98 S.Ct. at 796 (citing *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. at 527, 79 S.Ct. at 966). But

appellants' own witness testified that the New Jersey-Westchester-Long Island route takes only 48 miles or about one hour longer to drive than a New Jersey-New York City-Long Island route. And while appellants' witnesses testified that trucks traveling to Long Island have sometimes had to sit on the side of the road to wait for the curfew to lift, appellants did not present convincing evidence that they could not eliminate such delays by better scheduling to avoid the curfew, especially in light of the fact that the City allows unloaded trucks, if so marked, to travel freely even at rush hours. We agree with the City that these inconveniences are not unconstitutionally disproportionate when balanced against the public interest in avoiding a catastrophic accident in a densely populated urban area. *See also Morningside Renewal Council, Inc. v. United States Atomic Energy Commission*, 482 F.2d 234, 242 (2d Cir. 1973) (dissenting opinion), *cert. denied*, 417 U.S. 951, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974).

Appellants argue that New York City cannot constitutionally shift the danger of compressed gas transport onto neighboring communities. But their reliance on *City of Philadelphia v. New Jersey* is misplaced. In that case the Court invalidated a New Jersey statute prohibiting the importation of out-of-state waste for disposal but leaving New Jersey landfill sites open for disposal of domestic waste. The holding turned on the finding that New Jersey's statute discriminated against out-of-state articles of commerce solely on the basis of their origin. 437 U.S. at 626–27, 98 S.Ct. at 2536–37. The regulations at issue here, by contrast, are not facially discriminatory against interstate commerce. They make no interstate/intrastate distinction. *See also New England Power Co. v. New Hampshire*, —— U.S. ——, 102 S.Ct. 1096, 71 L.Ed.2d 188 (1982). Nor do the New York regulations "deflect[ ] interstate commerce away from the state" while providing exceptions favoring intrastate commerce as in *Consolidated Freightways Corp. v. Kassel*, 612 F.2d 1064, 1070–71 (8th Cir. 1979), *aff'd*, 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981). If anything, they detour interstate commerce within the state. In any case, it is not clear that out-of-state truckers asserting a commercial burden have standing to represent the interests of Westchester or New Jersey residents in avoiding increased risks to which New York City might have exposed them without their political participation.

For these reasons, we conclude that neither the general ban nor the curfew provisions unconstitutionally burden interstate commerce.

Appellants also argue that the Fire Department regulations have been preempted. 49 U.S.C. § 1811(a) provides that "any requirement, of a state or political subdivision thereof, which is inconsistent with any requirement set forth in [the HMTA] or in a regulation issued under [the HMTA] is preempted."[5] Appellants point to only two specific provisions of the HMTA and its accompanying regulations with which the New York City regulations might be inconsistent: the "without unnecessary delay" provision of 49 C.F.R. § 177.853(a), and the provision of *id.* § 397.9(a) that trucks avoid "heavily populated areas" unless there is no practical alternative. Appellants also suggest that shifting the danger to neighboring communities is an obstacle to the general purpose of the HMTA to ensure national safety from hazardous gas transport.

■ We agree with Judge Griesa that "the Fire Department regulations, as enforced . . . , are entirely consistent with, and in furtherance of, the federal regulations and their underlying purposes," *i.e.*, to pro-

---

5. 49 U.S.C. § 1811(b) allows a state or political subdivision to apply to the Secretary of DOT for an exemption from preemption of inconsistent state or local regulations. Appellants are wrong, however, to construe this as a requirement that a state seek exemption before implementing an arguably inconsistent regulation. The HMTA does not state that all inconsistency determinations are themselves within the primary jurisdiction of the Secretary, but apparently leaves them to the agency *or* the courts. *National Tank Truck Carriers, Inc. v. Burke*, 608 F.2d 819, 822 (1st Cir. 1979). Thus local regulations may be promulgated first, and challenged in court later, as they were here.

tect against risks to life and property from the transportation of hazardous materials. 515 F.Supp. at 671. First, there is no direct conflict between the New York City routing and curfew regulations and the federal regulations such that compliance with both is a physical impossibility, *see Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978); *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). The New York City routing requirements impose only a necessary delay, and allow a practicable alternative to travel through a heavily populated area, as 49 C.F.R. §§ 177.853(a) and 397.9(a) permit. Thus as in *Jones v. Rath Packing Co.*, 430 U.S. 519, 540, 97 S.Ct. 1305, 1317, 51 L.Ed.2d 604 (1977), "it would be possible to comply with the state law without triggering federal enforcement action." *See also Buck v. California*, 343 U.S. 99, 101–02, 72 S.Ct. 502, 504, 96 L.Ed. 775 (1952).

Second, the New York City regulations do not "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941), as they plainly promote safety, which is the goal of the HMTA, while they do not overlap with any specific directives of the Secretary. The Secretary has not issued, and cannot practicably issue, specific routing requirements for localities, whose own agencies are very likely far better equipped to do so. Thus while Congress did indeed express the goal of national uniformity when it enacted the HMTA, this goal has not been extended by the Secretary to embrace the local routing necessary to avoid the very dangers contemplated in 49 C.F.R. § 397.9(a).

Appellants do make out a plausible case that the City's hazard class definitions [6]—unlike routing requirements but like the placard and testing requirements Judge Griesa struck down as inconsistent—are preempted by federal definitions and impede the uniform enforcement of these definitions. The City says the record is too scanty on this issue and that the court should defer to the DOT, before which there is currently pending an inconsistency action. We think remand on this point is appropriate, and leave it to the district court whether to take more evidence or to await DOT action, which it is not bound to do, *see National Tank Truck Carriers, Inc. v. Burke*, 608 F.2d at 825.

We affirm the district court's holdings that New York City's hazardous gas routing and curfew requirements are constitutional and are not preempted by federal law; we remand only for determination whether the City's hazard class definitions are preempted. Costs to appellees.

---

6. Appellants refer to three major conflicts between the hazard class definitions of New York City and the federal hazardous materials regulations:

1. The definition of "gas" in F.P. Directive 5–63 is material under "pressure greater than six pounds to the square inch gauge at 70° F.," while the definition under the HMTA, 49 C.F.R. § 173.300(a) refers to "an absolute pressure exceeding 40 p.s.i. at 70° F.," which we are told is equivalent to 25 pounds per square inch gauge. Thus appellants argue that New York calls some materials gases that are liquid under federal standards.

2. The definition of "inflammable mixtures" is based in New York on the "open-cup" test, while under the HMTA it is based on the "closed-cup" test, 49 C.F.R. § 173.115, which we are told can result in major differences in classification.

3. "Combustible mixtures" similarly are differently defined.

Because hazard classification determines whether permits must be obtained and how trucks are to be marked, it can have economic impact on carriers. For example, appellants presented evidence below that shippers advise carriers about the type of cargo to be carried according to federally defined classifications, so that a carrier might have to bear additional expense to ensure local compliance. Thus differing New York hazard class definitions might be found to conflict with federal law by posing obstacles to the uniform effectuation of a congressional regulatory scheme. *See Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 160–68, 98 S.Ct. 988, 995–99, 55 L.Ed.2d 179 (1978); *Chemical Specialties Mfrs. Ass'n, Inc. v. Lowery*, 452 F.2d 431 (2d Cir. 1971).