**NATIONAL TANK TRUCK CARRIERS, INC., Plaintiff, Appellee,**

v.

**Edward F. BURKE, Administrator, Rhode Island Division of Public Utilities and Carriers, Defendant, Appellant.**

No. 79–1057.

United States Court of Appeals, First Circuit.

Argued Sept. 12, 1979.

Decided Oct. 12, 1979.

John M. Roney, with whom John R. McDermott, Sp. Asst. Atty. Gen., and Mann & Roney, Providence, R. I., were on brief, for appellant.

Lawrence W. Bierlein, Washington, D. C., with whom James J. McGair, Providence, R. I., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, DOOLING, Senior District Judge.*

COFFIN, Chief Judge.

Appellant Burke, Administrator of the Rhode Island Division of Public Utilities & Carriers (the Division), appeals from the entry of a preliminary injunction enjoining him from enforcing certain state rules and regulations pertaining to the transportation of liquid energy gases (LEG).

The interstate transportation of such gases is regulated by the United States Department of Transportation (DOT) pursuant to the Hazardous Materials Transportation Act, 49 U.S.C. § 1801, *et seq.* The Act, however, does not call for complete preemption of all state regulations in this area. Rather, it provides that all inconsistent state regulations are preempted except those for which the Secretary of the DOT grants a specific exemption. Thus, all consistent and exempted inconsistent state regulations are allowed to remain in effect.[1]

The Rhode Island legislature empowered the Division to promulgate regulations governing LEG use, storage, and transportation. Prompted by the recommendations of a Governor's task force created in the wake of concern about several published reports of catastrophic LEG accidents elsewhere,

---

* Of the Eastern District of New York, sitting by designation.

1. Section 1811 provides in relevant part:

"(a) General.—Except as provided in subsection (b) of this section, any requirement, of a State or political subdivision thereof, which is inconsistent with any requirement set forth in this title, or in a regulation issued under this title, is preempted.

"(b) State Laws.—Any requirement, of a State or political subdivision thereof, which is not consistent with any requirement set forth in this title, or in a regulation issued under this title, is not preempted if, upon the application of an appropriate state agency, the Secretary determines, in accordance with procedures to be prescribed by regulation, that such requirement (1) affords an equal or greater level of protection to the public than is afforded by the requirements of this title or of regulations issued under this title and (2) does not unreasonably burden commerce. Such requirement shall not be preempted to the extent specified in such determination by the Secretary for so long as such State or political subdivision thereof continues to administer and enforce effectively such requirement."

appellant issued a series of "emergency regulations" governing the highway transportation of LEG intended for use by Rhode Island public facilities.

Following the effective date of these regulations, appellee National Tank Truck Carriers, Inc., an association representing a large number of tank truck carriers, several of whom carry LEG to Rhode Island public facilities, filed an action in the district court requesting, in part, preliminary and permanent injunctive relief preventing enforcement of the state regulations on the grounds that they were preempted by the federal Act. Two days prior to the hearing of the appellee's request, the state applied to the DOT for a ruling pursuant to department procedures [2] on the question of whether or not the state regulations were inconsistent with federal law. There were indications that the DOT might issue such a ruling during the early summer of 1979; however, it has not yet done so.

Following a two day hearing, the district court denied the motion for a preliminary injunction except with respect to three state requirements pertaining to vehicle equipment. With regard to these three regulations [3] the district court found that they "may well be invalid" and that in order to comply with them appellee would have to incur substantial expenses. The court therefore enjoined enforcement of these particular regulations "for a reasonable time" until the DOT determination was issued. The determination was not forthcoming as had been expected. Preferring to defer to the DOT for a final determination of the consistency issue, the district court continued the injunction despite the delay.[4]

Appellant's first contention is that the actions of the district court are barred by the doctrine of primary jurisdiction. He asserts that determinations of lack of consistency, hence preemption absent an exemption, can only be made by the DOT. Therefore, appellant argues, since the district court cannot make a final determination on the question of consistency, it should not have issued the preliminary injunction which necessarily implies an opinion about the final answer. *See Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973).

Appellant's second contention is that even assuming that a district court could issue such an injunction, in the present case it was an abuse of discretion to do so. Specifically, appellant claims that the district court improperly applied the traditional equitable standards for ruling on motions for preliminary injunctions. We shall address each of appellant's two contentions separately.

## I.

■ "The doctrine of primary jurisdiction is a flexible tool for the allocation of business between court and agency and should seldom be invoked unless a factual question requires both expert consideration and uniformity of resolution." *Locust Cartage Co., Inc. v. Transamerican Freight Lines, Inc.*, 430 F.2d 334, 340 n. 5 (1st Cir.), *cert. denied*, 400 U.S. 964, 91 S.Ct. 365, 27 L.Ed.2d 383 (1970). Properly understood, the doctrine is not jurisdictional per se, but rather is a means of procuring "harmony, efficiency, and prudence" in areas of overlapping judicial and administrative concern. *Mashpee Tribe v. New Seabury Corp.*, 592 F.2d 575, 580 n. 1 (1st Cir.), *cert. denied*, —— U.S. ——, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979). Moreover, the mere fact that an administrative agency is prepared to make

---

**2.** 49 C.F.R. § 107.203–211 (1978).

**3.** The enjoined state regulations would require LEG motor carriers to have two-way radios, illuminated bumper signs warning other traffic to stay 500 feet behind, and "frangible shank-type" locks. These were the only three state requirements pertaining to vehicle equipment,

and hence the only aspects of the Rhode Island regulations which would necessarily have impact outside of Rhode Island.

**4.** There had been some indication that a DOT ruling might be issued as early as June 29, 1979. As of the date of this opinion, however, the DOT has yet to issue a ruling.

a determination of an issue within an area of its concern does not itself call for invocation of the doctrine. In a particular area, harmonious, concurrent exercise of jurisdiction by both the agency and the courts may well be the most efficient and prudent means of proceeding. *See Mashpee Tribe v. New Seabury Corp., supra.*

While the pertinent factors to be considered are numerous and vary from case to case, *see Mashpee Tribe v. New Seabury Corp., supra,* an important preliminary consideration is whether judicial deference to agency determination lies at the heart of the applicable statutory scheme created by Congress. *Chicago Mercantile Exchange v. Deaktor,* 414 U.S. 113, 114–15, 94 S.Ct. 466, 38 L.Ed.2d 344 (1973); *Ricci v. Chicago Mercantile Exchange,* 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973); *Locust Cartage Co., Inc. v. Transamerican Freight Lines, Inc., supra.* The statute in this case provides for two relevant determinations. Section 1811(a) calls for a determination that a particular state regulation is inconsistent with federal law. Section 1811(b) provides for a determination of whether a state regulation determined to be inconsistent nevertheless merits an exemption from preemption. The determination necessitated by § 1811(b) is specifically assigned by Congress to the DOT. Understandably, Congress was apparently concerned that the expertise of the agency be applied in any determination that an inconsistent state regulation be allowed to remain in effect.

The statute is silent, however, as to who is to make the determination of whether a state regulation is in fact inconsistent and thus preempted unless exempted by a § 1811(b) DOT ruling. Juxtaposed with the explicit provision for DOT determination in § 1811(b), this silence implies that the concerns which led Congress to provide for DOT determination of exemptions were not equally important in the drafting of § 1811(a). Rather, it seems reasonable to infer that Congress was content to allow *either* the agency or the courts to make the determination of inconsistency.

Indeed, DOT itself has so interpreted the Act. It has stated that "[a] determination as to whether a state or local requirement is consistent or inconsistent with a Federal statute or Federal regulations is traditionally judicial in nature", yet the Act does not require that the courts be the "exclusive arbitrators" of the issue. 41 Fed.Reg. 38168 (1976). Thus, if we were to adopt appellant's position, we would have to reject DOT's understanding of its role under the Act in order to take advantage of its expertise in interpreting and enforcing the Act.

It therefore seems reasonable to conclude that a district court is not required to defer to the DOT for determinations of inconsistency.[5] This conclusion is buttressed by the fact that the technical expertise required in making a § 1811(b) determination that an inconsistent state regulation may nevertheless remain in effect is not called for to the same degree in making a § 1811(a) finding that a regulation is inconsistent and preempted. Such a difference between the level of expertise required is an important factor in deciding whether deference to an initial agency determination is necessary. *See Mashpee Tribe v. New Seabury Corp.,* 592 F.2d 575, 580 (1st Cir. 1979). Moreover, in the event that the DOT might be concerned that a particular judicial determination of inconsistency is unwarranted, it can

---

5. *Kappelmann v. Delta Airlines, Inc.,* 176 U.S. App.D.C. 163, 539 F.2d 165 (D.C. Cir. 1976), *cert. denied,* 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 776 (1977), cited by appellants, is not to the contrary. In *Kappelmann* the plaintiff asked the court to rule that the Hazardous Materials Transportation Act required airlines to warn passengers when a plane was carrying radioactive materials. In effect, this was a request that the court promulgate a regulation under the Act, which it declined to do. In the present case, the plaintiff did not make such a request; the request here was only for a preemption ruling.

grant a § 1811(b) exemption, negating the ramifications of the perceived error.[6]

We thus find that the doctrine of primary jurisdiction would not bar a judicial determination that a state regulation is preempted by federal law. It follows that the doctrine does not require us to set aside the preliminary injunction simply because the court expressed a view as to what the final decision on the merits might be.

## II.

■ "The traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance he will suffer irreparable injury and also that he is likely to prevail on the merits." *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). Application of these standards to a particular set of facts is not a mechanical process, and other factors may enter into consideration. *See, e. g., Tuxworth v. Froehlke,* 449 F.2d 763 (1st Cir. 1971) (required degree of likelihood of success on the merits depends upon various considerations); *Brown & Williamson Tobacco Corp. v. Engman,* 527 F.2d 1115 (2d Cir. 1975), *cert. denied,* 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976) (district court's discretion in granting or denying injunction is greater when the public interest is involved).

*For purposes of appellate review, however,* the issue to be addressed is "simply whether the issuance of the injunction, in light of the applicable standard, constituted an abuse of discretion." *Doran v. Salem Inn, Inc., supra; Brown v. Chote,* 411 U.S. 452, 457, 93 S.Ct. 1732, 36 L.Ed.2d 420

(1973); *Grimard v. Carlston,* 567 F.2d 1171 (1st Cir. 1978). It follows therefore that appellant will not succeed if he merely convinces us that we would not have originally granted the injunction; he must carry the heavy burden of proving an abuse of discretion.

With these points in mind, we turn to appellant's attack on the merits of the issuance of the preliminary injunction in this case. This attack is on several grounds; appellant claims that there was no likelihood of success on the merits, that the district court failed to make the requisite finding of irreparable injury, and that it abused its discretion in weighing the public interest involved and overriding the judgment of the state agency. We address each of these grounds in turn.

### A. *Likelihood of Success on the Merits*

The only substantive issue presented by the request for the injunction is whether the state regulations are preempted by the federal Act. Both parties agree that the state regulations are at variance with federal law. Furthermore, it is clear that a finding that a state regulation is "inconsistent" with federal law will without more require a holding of preemption. *See* 49 U.S.C. § 1811(a), set forth in note 1, *supra.* Therefore, the dispute whose probable outcome the district court was required to surmise was whether these "varying" state regulations are "inconsistent" within the meaning of the Act.[7]

The use of the word "inconsistent" in the Act's preemption clause implies that state laws which merely vary from federal law—

6. The same reasoning does not necessarily apply to a finding of consistency. Arguably, the DOT would be forced to promulgate a new regulation in order to eliminate the effects of what it regarded as an erroneous holding of consistency. The question whether a court should nevertheless make such a ruling, however, is not before us. We note only that the DOT itself is generally reluctant to issue such a ruling. *See* 49 C.F.R. § 107.215 (1978).

7. The district court did not need to surmise, nor could it, the likelihood that the DOT would

grant an exemption to the state regulations under § 1811(b). If the district court ultimately finds the regulations inconsistent, hence preempted, appellant may apply to the DOT for such an exemption. The possibility that the DOT may grant the exemption does not, however, mean that preemption cannot occur before the application has been denied. To hold otherwise would effectively insulate all state regulations from preemption, because only the state can apply for a § 1811(b) ruling.

as opposed to those which conflict with federal law—are not preempted, *cf. Jones v. Rath Packing Co.,* 430 U.S. 519, 540, 97 S.Ct. 1305, 1317, 51 L.Ed.2d 604 (1977) ("Since it would be possible to comply with the state law without triggering federal enforcement action we conclude that the state requirement is not inconsistent with federal law."). On the other hand, there is evidence that the legislative history of the Hazardous Materials Transportation Act is significantly different from that which was involved in *Rath Packing.* Specifically, there is strong support for the notion that a primary Congressional purpose intended to be achieved through the legislation was to secure a general pattern of uniform, national regulations, and thus "to preclude a multiplicity of State and local regulations and the potential for varying as well as conflicting regulations in the area of hazardous materials transportation." Senate Committee on Commerce, Report No. 93–1192, September 30, 1974. Moreover, there is evidence in the record to support a finding that the enjoined regulations provisions for additional safety warnings might indeed be in actual conflict with federal regulations, particularly if the federal regulations are regarded as embodying a balancing of competing interests. *See Kappelmann v. Delta Airlines, Inc.,* 176 U.S.App.D.C. 163, 171 n. 25, 539 F.2d 165, 173 n. 25 (D.C. Cir. 1976), *cert. denied,* 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 776 (1977) ("To permit a rule that would give rise to an unwarranted belief that passenger safety is jeopardized when riding in an aircraft carrying radioactive materials that are being carried in compliance with [federal] regulations would be inconsistent with the purposes of the Hazardous Materials Transportation Act . . . .") (dictum). Therefore, although the issue is a close one, because the substantive question presented is one of first impression, because there has not yet been an opportunity to explore it more fully, and

because it is clear that the district court was proceeding with care and caution in selecting out only three particular state regulations to enjoin, we cannot hold that the district court abused its discretion in evaluating the factor of probability of success on the merits.

B. *Irreparable Harm*

In issuing the injunction, the district court failed to make an explicit finding that it was necessary to prevent irreparable harm to the plaintiffs. It did, however, note the need to consider this factor, and found that there was "a potential of substantial expense to Plaintiff by the application of regulations which may well be invalid." Because "[t]he prime prerequisite for injunctive relief is the threat of irreparable future harm", *Quechan Tribe of Indians v. Rowe,* 531 F.2d 408 (9th Cir. 1976); *see generally* Wright & Miller, Fed.Prac. & Proc. § 2948 at 431 (1973), a preliminary injunction should generally only be granted when there is a finding of irreparable injury. However, because it is clear that the district court did consider this factor and because it is inconceivable that the plaintiff could recover the "substantial expenses" which the court found would have resulted from denial of the injunction,[8] we decline appellant's request that we reverse the district court decision for the failure to label explicitly the injury as irreparable.

C. *Balancing of Interests*

We also reject appellant's more general attack on the district court's exercise of its discretion in balancing the competing interests involved. These interests are many and conflicting: plaintiff's desire to avoid irreparable harm, the federal interest in preventing implementation of inconsistent state regulations and the resultant burden on commerce, and the state interest in enforcing what it regards to be valid safety

---

8. Although Rhode Island has waived its sovereign immunity, R.I.G.L. sec. 89–1–31 (1969), we can think of no cause of action which would be available to plaintiffs to recover their expenses from the state, nor do appellants suggest one.

regulations. It is clear that the district court in its written opinion carefully considered and weighed these competing interests. In so doing it did not abuse its discretion.

## III.

We therefore hold that the district court did not abuse its discretion in issuing the challenged preliminary injunction. We note, however, that the issuance of the injunction appears to have been motivated in large part by a belief that the state regulations were inconsistent with federal law, together with a desire to defer to what appeared at the time to be an imminent determination of the consistency question by the DOT. Whether that desire was the result of a misconceived belief that the court was barred from making the determination on its own, or instead was an attempt to seize in its discretion what appeared at the time to be an efficient, ready means of avoiding an unnecessary decision is not clear. In any event, our discussion of the primary jurisdiction issue in this opinion makes it clear that the district court is free to proceed to a final decision on the merits if it determines that it is no longer reasonable to await DOT action.[9]

*Affirmed.*

---

[9]. This is not meant to imply that the district court should not feel free to request DOT participation in the suit, such as might be achieved through submission of an amicus brief. Additionally, appellant is free to petition the district court for a determination as to whether or not the reasonable period of time for which the injunction was intended to last has run.