### NATIONAL TANK TRUCK CARRIERS, INC.

v.

**Edward F. BURKE.**

**Civ. A. No. 78–0621.**

United States District Court, D. Rhode Island.

March 17, 1982.

---

**512**

James J. McGair, Providence, R. I. and Lawrence W. Bierlein, Washington, D. C., for plaintiff.

John M. Roney, Mann & Roney, and John R. McDermott, Sp. Asst. Atty. Gen., Providence, R. I., for defendant.

## OPINION

FRANCIS J. BOYLE, District Judge.

Plaintiff in this action seeks a permanent injunction prohibiting the Defendant, in his capacity as Administrator of the Rhode Island Division of Public Utilities and Carriers, from enforcing certain rules and regulations promulgated by the Division pursuant to R.I.Gen.Laws §§ 39–1–2.1 and 45–2–17. Plaintiff also requests declaratory judgment specifying the rights of the parties and any additional relief deemed appropriate. The rules and regulations, effective November 3, 1978, concern the transportation of Liquefied Natural Gas (LNG) and Liquefied Petroleum Gas (LPG) over the highways, streets or roads of Rhode Island to be used by a public utility either in intrastate commerce or in interstate commerce where the loading or unloading of tank trailers is to be performed within Rhode Island. Plaintiff, National Tank Truck Carriers, Inc., is an association of cargo carriers some of whom regularly transport Liquefied Energy Gases (LEG) to public utilities located in Rhode Island.

The Declaration of Policy in the regulations states, in part:

It is hereby declared to be the policy of the state to regulate the transportation of hazardous materials, as herein defined, within the boundaries and/or over the highways and roads of this state.

The regulations seek to accomplish this goal by regulating some, but not all, transport of Liquefied Energy Gases to some, but not all, purchasers within the State by requiring an entry permit which must be obtained before entry into the State. The entry permit, which may apparently be granted or denied at the whim of the regulator, is valid only for travel over specified routes and during specified hours and without regard to either existing nation-wide regulations or the possibility of conflicting requirements of other states. There is no effort to regulate shipments of the same hazardous products by rail or water transport or to consumers other than public utilities or shipments from or through the State to other states.

The regulations were adopted following a study of a task force appointed by the Governor of the State of Rhode Island from interested public agencies and prompted by a legitimate concern for public safety. There can be no doubt that the State's purpose is proper. Essentially, the issue is whether the regulations may be enforced in light of the impact of the regulations upon federal regulatory policy and the interstate consequences of the regulations.

Paragraph I contains a Declaration of Policy and definitions. Paragraphs II and III require a Rhode Island permit prior to transportation of LPG or LNG along any highway, street or road in the State. The permit must be applied for not less than four hours nor more than two weeks prior to each transport. The application must include the date and time of shipment, the cargo to be shipped, vehicle identification number and registration, proof of vehicle inspection and proper insurance coverage, and a certificate that there has been compliance with the federal Department of Transportation regulations. The permit must be in the possession of the operator of the vehicle.

Paragraph IV requires that the vehicle have a two-way radio within easy reach of the driver. The radio is to be used to notify appropriate authorities of any accident or mishap occurring within the State.

Paragraph V prohibits the transportation of LNG and LPG within the State during the hours of 7–9 A.M. and 4–6 P.M., Monday through Friday.

Paragraph VI requires an immediate report of any accident, mishap or any safety irregularities to the Rhode Island State Police and requires that a written report of any accident, mishap or any safety irregularities be filed with the Motor Carrier Examiner, Division of Public Utilities and Carriers and Rhode Island Department of Transportation within twenty-four hours.

Paragraph VII requires a rear bumper sign, at least three inches high, illuminated for evening travel, which reads "MUST STAY BACK 500 FEET."

Paragraph VIII requires transportation vehicles whether loaded or empty to travel with their headlights on.

Paragraph IX requires that all trailers be equipped with a frangible shank type lock to prevent tampering of valves or equipment.

Paragraph X requires drivers, along with proper personnel, to inspect vehicles for safety defects and liquid and gas leaks before leaving and upon arrival at loading or unloading areas.

Paragraph XI provides that the regulations are to be considered in addition to federal regulations governing the transportation of hazardous materials.

This Court initially heard this matter upon Plaintiff's prayer for a preliminary injunction. At that time enforcement of Paragraphs IV (two-way radio), VII (rear bumper sign) and IX (frangible lock) of the rules and regulations were enjoined pending a determination by the United States Department of Transportation as to whether the Rhode Island rules and regulations

were consistent with existing federal regulations. The Court of Appeals affirmed. *National Tank Truck Carriers, Inc. v. Burke,* 608 F.2d 819 (1st Cir. 1979).

The Materials Transportation Bureau (MTB) of the Department of Transportation issued an inconsistency ruling effective December 13, 1979. *State of Rhode Island Rules and Regulations Governing the Transportation of Liquefied Natural Gas and Liquefied Propane Gas Intended To Be Used by a Public Utility; Inconsistency Ruling (IR–2),* 44 Fed.Reg. 75,566 (1979) [hereinafter *Inconsistency Ruling (IR–2)*]. The MTB determined that Paragraphs I (definitions), IV (two-way radio), part of VI (immediate report), VIII (headlights), X (inspection) and XI (Regulations supplement Federal Regulations) were not inconsistent with the Hazardous Materials Transportation Act (HMTA), 49 U.S.C. §§ 1801–1812. Paragraphs II, III (permit), V (curfew), part of VI (written report), VII (bumper sign) and IX (frangible locks) were found to be inconsistent with the HMTA. In summary, the requirements concerning two-way radios, immediate reporting of accidents to the State Police, illumination of headlights, and vehicle inspection were found to be consistent with the Hazardous Materials Transportation Act. However, the requirements concerning a permit and an application, limitations upon the hours of travel, subsequent written notice of accidents within twenty-four hours, bumper signs and frangible locks were deemed to be inconsistent with federal law and, therefore, preempted.

A second hearing was held on the merits of this matter. The State Division of Public Utilities and Carriers (the Division) no longer seeks to implement the rules and regulations, Paragraphs VII and IX, requiring rear bumper signs and a frangible (breakable) lock.[1] Both requirements are, therefore, declared to be invalid.

*Inconsistency Ruling (IR–2),* of the Department of Transportation's MTB was af-

---

1. Apparently the Division of Public Utilities recognizes as this Court does that a three inch high sign would hardly be understood 500 feet away by even the most visually acute and that a lock which can be broken upon impact is hardly a lock at all.

firmed upon appeal under the provisions of 49 C.F.R. § 107.211 (1980) and issued October 17, 1980. *State of Rhode Island Rules and Regulations Governing the Transportation of Liquefied Natural Gas and Liquefied Propane Intended To Be Used by a Public Utility; Inconsistency Ruling (IR–2); Notice of Decision on Appeal,* 45 Fed.Reg. 71,881 [hereinafter *Inconsistency Ruling (IR–2); Notice of Decision Appeal*].

Plaintiff advances six arguments to support its prayer for injunction and declaratory relief:

1. The regulations are inconsistent with the HMTA, 49 U.S.C. §§ 1801–1812;

2. The regulations concerning interstate carriage of LPG are lacking statutory authorization;

3. The regulations are unreasonable in violation of R.I.Gen.Laws § 39–3–33;

4. The radio and written report requirements are vague and thus violate the due process clause of the Fourteenth Amendment of the United States Constitution;

5. The regulations violate the equal protection clause of the Fourteenth Amendment of the United States Constitution; and

6. The regulations place an undue burden upon interstate commerce in violation of Art. I, § 8. cl. 3 of the United States Constitution.

## PREEMPTION

■ The first issue to be considered is whether the Rhode Island rules and regulations are inconsistent with the HMTA and therefore preempted by federal law. The Congress of the United States has directed that state regulations "inconsistent" with requirements of federal law are not enforceable. Thus, if a state regulation is inconsistent with the Hazardous Materials Transportation Act, then that regulation is invalid by mandate of Congress. *See* 49 U.S.C. § 1811(a). Section 1811(a) provides: "Except as provided in subsection (b) of this section, any requirement, of a State or political subdivision thereof, which is inconsistent with any requirement set forth in

this chapter, or in a regulation issued under this chapter, is preempted." Section 1811(b) delegates specifically to the Secretary of the Department of Transportation (DOT) the power to decide whether a state or local regulation determined to be inconsistent nevertheless qualifies as an exemption from preemption.

■ Although the federal statute does not indicate who is to make a determination of inconsistency, the First Circuit has held that such a determination can be made by either the Department of Transportation or the courts and that "a district court is not required to defer to the DOT for determinations of inconsistency." *National Tank Truck Carriers, Inc. v. Burke,* 608 F.2d at 822. The Materials Transportation Bureau, likewise, has conceded that its existence and function does not preclude this Court from determining preemption under the HMTA. *Inconsistency Ruling (IR–2),* 44 Fed.Reg. at 75,573, n.19. The fact that the Materials Transportation Bureau has issued an inconsistency ruling concerning the Rhode Island regulations does not dispose of the preemption issue. Inconsistency rulings of the Materials Transportation Bureau are not derived from hearing adversary proceedings and represent the advisory opinions of the DOT. *Inconsistency Ruling (IR–2); Notice of Decision on Appeal,* 45 Fed.Reg. at 71,882. The MTB's ruling in this case is not decisive on the issue of inconsistency and it is not binding upon this Court. *See Skidmore v. Swift & Co.,* 323 U.S. 134, 139–40, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

■ Nonetheless, in ascertaining the validity of the State regulations, this Court recognizes the experience and judgment of those with nation-wide responsibility who rendered the inconsistency determination and may properly resort to the MTB's rulings for guidance. *Id.* at 140, 65 S.Ct. at 164.

■ If a Rhode Island regulation is inconsistent with the HMTA, "without more," it is preempted. *National Tank Truck Carriers, Inc. v. Burke,* 608 F.2d at 823; *see* 49 U.S.C. § 1811(a). Inconsistency

requires more than a variance between state and federal law. A Rhode Island regulation must actually conflict with the HMTA in order to be deemed inconsistent with it. *National Tank Truck Carriers, Inc. v. Burke*, 608 F.2d at 823–24.

■ The preemption criteria utilized by the DOT is obviously based upon that applied by the Supreme Court to determine whether a conflict exists between a state and federal statute in areas where Congress has not completely foreclosed state legislation. *See Inconsistency Ruling (IR–2)*, 44 Fed.Reg. at 75,567. The Supreme Court has stated that a state law is void if it conflicts with a federal statute. A conflict exists "where compliance with both federal and state regulations is a physical impossibility . . . ," *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978), *quoting Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963), or where the state "law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Ray v. Atlantic Richfield Co.*, 435 U.S. at 158, 98 S.Ct. at 994, *quoting Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

The DOT's preemption regulation establishes two criteria to be applied in determining whether a state law is inconsistent with the HMTA. 49 C.F.R. § 107.209(c) (1980) provides:

> In determining whether a State or political subdivision requirement is inconsistent with the Act or the regulations issued under the Act, the Associate Director for [Operation and Enforcement] considers:

> (1) Whether compliance with both the State or political subdivision requirements and the Act or the regulations issued under the Act is possible; and

> (2) The extent to which the State or political subdivision requirement is an obstacle to the accomplishment and execution of the Act and the regulations issued under the Act.

A state regulation is inconsistent with the HMTA if the state regulation directly conflicts with it or if the state regulation obstructs the achievement of the full purposes of the Act.

■ The MTB resolves the issue of inconsistency by examining the state regulation on its face. *See Inconsistency Ruling (IR–2); Notice of Decision on Appeal*, 45 Fed. Reg. at 71,882–83. The relationship between the federal statute and state regulation must be evaluated as the federal statute and state regulation are interpreted and applied and not solely as they are written. *See Jones v. Rath Packing Co.*, 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604, *reh. denied*, 431 U.S. 925, 97 S.Ct. 2201, 53 L.Ed.2d 240 (1977); *DeCanas v. Bica*, 424 U.S. 351, 363–65, 96 S.Ct. 933, 940–41, 47 L.Ed.2d 43 (1976).

In addition to the regulations promulgated under the HMTA, there are also Federal Motor Carrier Safety Regulations under the Interstate Commerce Act, 49 U.S.C. § 304, which can preempt the Rhode Island regulations. The Federal Motor Carrier Safety Regulations which set vehicle, equipment and driver requirements for motor carriers subject to the Interstate Commerce Act, are incorporated by reference into the HMTA. 49 C.F.R. § 177.804 (1980). The criterion for a determination of inconsistency under the Federal Motor Carrier Safety Regulations is set out at 49 C.F.R. § 390.30 (1980) which provides:

> Except as otherwise specifically indicated, Parts 390–397 of this subchapter are not intended to preclude States or subdivisions thereof from establishing or enforcing State or local laws relating to safety, the compliance with which would not prevent full compliance with these regulations by the person subject thereto.

The preemptive effect of the HMTA with respect to the Rhode Island regulations concerning two-way radios, illumination of headlights and vehicle inspection, which come under the Federal Motor Carrier Safety Regulations, is more limited encompassing only the first criterion set out in 49 C.F.R. § 107.209(c). *City of New York v.*

*Ritter Transportation, Inc.*, 515 F.Supp. 663, 670 (S.D.N.Y.1981).

■ The Rhode Island regulations must be examined in order to determine whether they conflict with the HMTA considering the full purposes and objectives of the Congress. *See Ray v. Atlantic Richfield Co.*, 435 U.S. at 158, 98 S.Ct. at 994. It was concern about the fragmented supervision expressed by the Department of Transportation in the area of hazardous materials transportation and the lack of comprehensive regulation over such transportation which prompted Congress to enact the HMTA. S.Rep.No.1192, 93d Cong., 2d Sess. 1–2, 7–9 (1974). The HMTA states that Congress's intent was "to improve the regulatory and enforcement authority of the Secretary of Transportation to protect the Nation adequately against the risks to life and property which are inherent in the transportation of hazardous materials in commerce." 49 U.S.C. § 1801. Additionally, the legislative history of the HMTA indicates that this Congressional purpose was to be attained by uniform, national regulations issued by the DOT which would "preclude a multiplicity of State and local regulations and the potential for varying as well as conflicting regulations in the area of hazardous materials transportation." S.Rep.No.1192, 93d Cong., 2d Sess. 37 (1974). Therefore, while it is clear that states and localities are not prevented entirely from issuing regulations in the area of hazardous materials transportation, the scope of such regulations is limited by the dominant role assigned to the Department of Transportation by Congress. *Inconsistency Ruling (IR–2)*, 44 Fed.Reg. at 75,568; *see National Tank Truck Carriers, Inc. v. Burke*, 608 F.2d at 824.

There is a sound basis for national preeminence of transportation limits. There is no evidence that Liquefied Energy Gases are produced within the State of Rhode Island. All of these gases consumed in Rhode Island must be transported into the State. Conflicting regulations of other states and lesser jurisdictions could make transport so burdensome or expensive as to effectively embargo the delivery of a product which is a matter of significant public necessity. Much of the product regulated under the Rhode Island regulations is transported from the Commonwealth of Massachusetts in the vicinity of the City of Boston. If Rhode Island may regulate the shipment, it follows that Massachusetts may also do so. The possibility of irreconcilable conflicts of regulations is obvious and inherent.

■ Although a primary Congressional objective was the promulgation of uniform, national standards in hazardous materials transportation, preemption of state regulations regarding highway safety is not to be undertaken lightly. *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429 443–44, 98 S.Ct. 787, 795–96, 54 L.Ed.2d 664 (1978). Given the legitimate concern the state has for the persons and property within its boundaries, the propriety of local highway safety regulation has long been recognized. *Id.* at 443, 98 S.Ct. at 795.

■ Deference should be given to state highway safety regulations because the state generally knows best how to handle problems unique to the area. *City of New York v. Ritter Transportation, Inc.*, 515 F.Supp. at 671. *See Ray v. Atlantic Richfield Co.*, 435 U.S. 171–72, 98 S.Ct. at 1001–02. Consequently, state highway safety regulations carry a strong presumption of validity. *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. at 444, 98 S.Ct. at 795; *Bibb v. Navajo Freight Lines*, 359 U.S. 520, 524, 79 S.Ct. 962, 965, 3 L.Ed.2d 1003 (1959). This presumption, however, clearly is not irrebuttable.

Defendant argued before the MTB that none of the Rhode Island regulations should be preempted because the State's high density population made hazardous materials transportation particularly dangerous. After a review of the census figures from around the nation, the MTB concluded that Rhode Island's population figures were not unique like those of New York City, for example, but rather the normal ones contemplated by the HMTA. *Inconsistency Ruling (IR–2)*, 44 Fed.Reg. at 75,569. This

Court does not accept this reasoning of the Materials Transportation Bureau. The fact that the safety of 1,000,000 New York citizens is at risk as opposed to 100,000 Rhode Island citizens does not justify a distinction between a "unique" and a "normal" calamity, if a calamity can ever be called "normal."

The Rhode Island regulations must be examined to determine if they are in direct conflict with a federal regulation and if not, where applicable, whether they represent an obstacle to the accomplishment and execution of the HMTA.

## I. PERMIT REQUIREMENTS (Paragraphs II and III)

Paragraph II requires that a permit be obtained "prior to transporting either Liquefied Natural Gas or Liquefied Propane Gas ... within the State of Rhode Island." Paragraph III requires that "at least 4 hours prior to the commencement of the transportation service" the motor carrier "will file" an application for a permit. This paragraph also provides the ambiguous requirement that "[t]he application for a permit may be submitted for a period of use of up to two weeks duration prior to utilization of said permit." The Defendant contends that this requirement means that an application for a permit could be made up to two weeks prior to a transportation movement and that a single permit could be valid for up to two weeks irrespective of the number of transportation movements. The MTB interpreted the regulation as requiring a separate permit, valid for a period of two weeks, for each transportation movement. *Inconsistency Ruling (IR–2)*, 44 Fed.Reg. at 75,570. According to the Defendant's interpretation a permit is valid for a term of two weeks regardless of the number of transportation movements which are made.

When the meaning of an administrative regulation is in doubt, the construction given the regulation by the agency which promulgated it can be conclusive. Indeed, the Supreme Court has stated in similar situations involving federal administrative agencies that in construing administrative regulations, "the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *United States v. Larinoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977) *quoting Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *accord, Lybarger v. Cardwell*, 577 F.2d 764, 766–67 (1st Cir. 1978).

The Division's contention that a permit is valid for any number of separate shipments for a period of up to two weeks is inconsistent with other requirements of Paragraph III. The permit application requires specific information which is unique to each shipment such as the route to be followed and the quantity of LEG transported. Consequently, assuming that a permit is valid for up to two weeks the information requested in the permit application clearly requires a separate application and permit for each shipment.

49 C.F.R. § 177.853(a) (1980) provides: *No unnecessary delay in movement of shipments.* All shipments of hazardous materials shall be transported without unnecessary delay, from and including the time of commencement of the loading of the cargo until its final discharge at destination.

Since some of the information required by the Rhode Island permit regulations cannot be provided until the cargo is actually loaded on the truck, delay is inevitable. The requirement that the permit must be applied for no less than four hours prior to shipment means that a loaded truck has to remain outside of Rhode Island for a minimum of four hours after loading before a permit is issued allowing movement of the LEG. If the LEG is to be shipped from out of state, from a location less than four hours travel time away, for example, Massachusetts or Connecticut, then an unnecessary delay must result. Furthermore, there was some evidence which indicated that the tank can safely contain the LEG for a limited time, as short as five hours in some

instances. The Rhode Island regulations, which require certification that the load is in compliance with federal motor safety regulations and that the quantity of product (which cannot be ascertained until after loading), are inconsistent, frustrating the accomplishment and execution of the HMTA, and thus are preempted.

Some of the information required by the Rhode Island regulations is identical to information which must be furnished on the Department of Transportation shipping paper in accord with the federal regulations. The Department of Transportation has suggested that states adopt the federal regulations in order to avoid duplication of effort and expense on the part of the applicant. If states do not adopt the federal regulations but rather promulgate their own, they must not be redundant. *See* S.Rep.No.1192, 93d Cong., 2d Sess. 37 (1974). While redundant requirements do not directly conflict with the HMTA, they do present an obstacle to the accomplishment and execution of the full purposes of the HMTA. States can obtain the desired information from the federal shipping paper rather than requiring the carriage of an additional paper containing identical information.

The Rhode Island permit application clearly contains redundant information requirements. The MTB, however, has ruled that it is not inconsistent with the HMTA because it is not required that the *application* be carried aboard the vehicle. *Inconsistency Ruling (IR–2); Notice of Decision on Appeal*, 45 Fed.Reg. at 71,884. Although the Rhode Island *permit* must be carried aboard the vehicle, the MTB presumed that it does not contain duplicative information and thus is not inconsistent with the HMTA. The primary concern of the DOT, the agency charged with administering the HMTA, appears to be that the carrier not be required to carry additional duplicative documents. Since the Rhode Island regulations do not result in such duplication, they are not inconsistent with the federal shipping papers required under the HMTA. Paragraphs II and III are inconsistent with the HMTA, as stated above, for causing unnecessary delay contrary to Department of Transportation's regulations in the transportation of hazardous materials and because the nature of the State regulations frustrates the Congressional policy of uniformity of regulation to the extent that practical coexistence of both systems of regulations is not possible. Therefore, Paragraphs II and III are preempted.

II. CURFEW (Paragraph V).

Paragraph V forbids the transportation of LEG over any highway, street or road in Rhode Island during the hours of 7–9 A.M. and 4–6 P.M., Monday through Friday. The Division's legitimate concern, of course, is the possibility of an accident occurring during rush hours when emergency response may be slower and a greater number of persons may be injured.

Whether carriers may interrupt transit in the State during rush hours and remain loaded but stationary off any highway, street or road or must begin and complete their transit within the State outside the curfew hours, this provision is subject to the same infirmities already found concerning permit requirements. A curfew that prevents entry or requires the stationary presence of LEG trucks in the State would cause an unnecessary delay in the transportation of hazardous materials contrary to 49 C.F.R. § 177.853.

Additionally, forcing carriers to remain outside Rhode Island's borders longer than necessary shifts the burden to adjacent states. In order to protect Rhode Island citizens the Division could have increased the risk of accidents involving hazardous materials for the citizens of Massachusetts and Connecticut.

Furthermore, even if the carriers could stop within the State during rush hours, unnecessary delays still would occur. Carriers. conceivably could have deliveries to make in addition to those in Rhode Island which would be postponed while the carriers waited for the curfew to be lifted.

In addition to causing unnecessary delays, time restrictions defeat Congress's intent for uniformity in the transportation of haz-

ardous materials. If states decide to place time constraints of this nature on the transportation of hazardous materials, the movement of such materials could be seriously impeded. *Inconsistency Ruling (IR–2)*, 44 Fed.Reg. at 75,571. Therefore, even though the curfew regulation does not directly conflict with the HMTA, it is inconsistent in that it undermines the full purposes of the Act and is preempted.

### III. NOTICE OF ACCIDENTS (Paragraph VI).

The requirement that written notice of an accident be given within twenty-four hours to the State Motor Carrier Examiner and the Rhode Island Department of Transportation is inappropriate in light of the existing federal written notice requirement. *Inconsistency Ruling (IR–2)*, 44 Fed.Reg. at 75,572. 49 C.F.R. § 171.16 (1980) requires that any unintentional release of a hazardous material or the occurrence of any of the incidents enumerated in 49 C.F.R. § 171.-15(a) (1980) be reported to the DOT in writing within 15 days. Although the Rhode Island written notice requirement differs slightly from the federal requirement, it is sufficiently similar to be considered inconsistent with the federal regulation. The need for uniform written report standards is imperative.

Paragraph VI also requires emergency notice to the State Police. This requirement promotes the public safety by facilitating a prompt emergency response. *Inconsistency Ruling (IR–2)*, 44 Fed.Reg. at 75,572. It goes almost without saying, that such notice should be given with or without a regulation which requires it. It is neither inconsistent nor in conflict with nor contrary to the purpose of Congressional policy.

### IV. TWO–WAY RADIO, HEADLIGHT, AND VEHICLE INSPECTION REQUIREMENTS (Paragraphs IV, VII and X Respectively).

The remaining Rhode Island regulations relate to subject-matter which are the concern of the Federal Motor Carrier Regula-

tions. These requirements will be deemed inconsistent with the HMTA only if they directly conflict with it. 49 C.F.R. § 390.30. Paragraph IV requires that vehicles be equipped with a two-way radio in order to notify proper officials in the event of an accident. There is no federal regulation concerning two-way radios. Since the Rhode Island regulation is not in direct conflict with federal law Paragraph IV is not preempted.

Paragraph VIII requires vehicles transporting hazardous materials through Rhode Island to travel with their headlights illuminated at all times. The State requirement does not directly conflict with the Federal Motor Carrier Safety Regulations concerning headlights, 49 C.F.R. §§ 392 and 397. Therefore, no inconsistency exists to preempt the Rhode Island regulation.

Paragraph X requires inspections upon arrival and departure at loading and unloading areas. The State inspection requirement, likewise, does not directly conflict with the HMTA regulations or the similar Federal Motor Carrier Safety Regulations codified at 49 C.F.R. §§ 392.7, 392.8 and 396. Therefore, the State inspection regulation is not inconsistent with the HMTA and is not preempted.

■ In summary, the regulations concerning the permit and application, curfew, and subsequent written notice of accidents are preempted by the HMTA and, therefore, invalid. The requirements concerning two-way radios, immediate reporting of accidents, illumination of headlights and vehicle inspection are consistent with the HMTA and, therefore, are not preempted.

The regulations consistent with the HMTA, two-way radios, immediate reporting of accidents, illumination of headlights and vehicle inspection, and thus not preempted, now will be examined to determine whether they should be enjoined permanently for any of the additional reasons advanced by the Plaintiff.

Before addressing Plaintiff's contentions concerning constitutional equal protection and commerce attacks upon the regulations,

two state law issues as well as a due process claim must be considered. Plaintiff contends that the regulations are unreasonable in violation of R.I.Gen.Laws § 39–3–33 and that the Defendant is not authorized by state law to regulate the transport of Liquefied Petroleum Gas.

■ Plaintiff's argument that the regulations are unreasonable when considered in the light of those regulations not preempted concerning two-way radios, lighting of headlights, immediate report of accidents to the State Police and inspection requirements is without merit. These requirements are unquestionably reasonable.

A more difficult and tangled concern is the argument concerning the Administrator's authority. The regulations state that they are authorized by R.I.Gen.Laws § 39–1–2.1 and refer to R.I.Gen.Laws § 45–2–17. Section 45–2–17 relates specifically to regulation of Liquefied Natural Gas facilities. No mention is made of Liquefied Petroleum Gas. Section 39–1–1, however, confers upon the Division of Public Utilities and Carriers, established by § 39–1–3, authority to regulate companies transporting either "natural or manufactured gas" as public utilities or authorizes the Administrator to exercise such regulating authority. The regulations were promulgated by the Administrator for the Division of Public Utilities and Carriers and are, therefore, authorized.

■ Plaintiff argues that the two-way radio and written report requirements are vague and thus void under the due process clause of the Fourteenth Amendment. The written report regulation, Paragraph VI, need not be considered here since it has been preempted by the HMTA. Paragraph IV states that the two-way radio "will be utilized to alert the appropriate federal, state or municipal agencies of any accident or mishap occurring within the State of Rhode Island." Plaintiff contends that the terms "appropriate" and "mishap occurring within the State of Rhode Island" are unduly vague. There is no merit in this contention.

2. Equal protection analysis applies to regulations issued by a State authorized agency as well as to legislation enacted by the State. *See*

The "appropriate" federal agency is designated by the regulations under the HMTA and the "appropriate" state or municipal agencies is a reference to the state or local police. A "mishap occurring within the State of Rhode Island" is an unexpected accident occurring within the State's borders. The Division could not list in the regulation every conceivable mishap. The term "mishap" may not be capable of a precise definition but a carrier clearly knows it when one occurs. Therefore, Paragraph V is not unduly vague and does not violate the due process clause.

## EQUAL PROTECTION

The Rhode Island regulations regulate only carriers who transport LEG by motor carrier over highways to be used by public utilities in intrastate commerce or in interstate commerce where the loading or unloading is to be performed within the State. Plaintiff contends that it is denied equal protection of the laws in that all other carriers who transport LEG to be used by consumers other than public utilities within the State or who transport LEG through the State in interstate commerce are not subject to the regulations.

R.I.Gen.Laws §§ 39–1–3 and 45–2–17 authorize the promulgation of regulations concerning common carriers transporting natural or manufactured gas. The General Assembly limited its delegation of authority to the Division to the regulation of natural or manufactured gas transported to Rhode Island to be used by public utilities in intrastate commerce. Section 39–1–2.1 states that the General Assembly intended the Division to regulate hazardous materials in order to protect the persons and property within Rhode Island.

■ The Rhode Island regulations do not infringe upon any fundamental right or concern a suspect class. Therefore, the appropriate standard by which to evaluate the regulations is the rational basis standard.[2]

*Railway Express Agency, Inc. v. New York,* 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949).

*United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 175, 101 S.Ct. 453, 459, 66 L.Ed.2d 368, 376 (1980). Applying the rational basis standard, the regulation must be upheld if the State's classification is rationally related to a legitimate state interest. *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976). Rhode Island, of course, has a legitimate state interest in the safety of its public and property. Furthermore, the Supreme Court has made it clear that a classification cannot be struck down because it may be unwise or underinclusive.

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369]. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theater Co. v. City of Chicago*, 228 U.S. 61, 69–70 [33 S.Ct. 441, 443, 57 L.Ed. 730] . . . .

*Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). The Supreme Court recently reaffirmed this principle in *United States Railroad Retirement Board v. Fritz*, 449 U.S. at 175, 101 S.Ct. at 459, 66 L.Ed.2d at 376. "[The rational basis standard] 'is true to the principle that the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy.'" *Id.*, quoting *Dandridge v. Williams*, 397 U.S. at 486, 90 S.Ct. at 1162.

■ States are given broad discretion to create classifications where social concerns such as the safety of the State's citizens and property are involved. They cannot act in a "patently arbitrary or irrational" way.

*United States Railroad Retirement Board v. Fritz*, 449 U.S. at 177, 101 S.Ct. at 460, 66 L.Ed.2d at 377.

Plaintiff must establish that the classification was based upon facts which the State could not reasonably have considered to have been true. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 463–64, 101 S.Ct. 715, 723–24, 66 L.Ed.2d 659 (1981); *Vance v. Bradley*, 440 U.S. 93, 111, 99 S.Ct. 939, 950, 59 L.Ed.2d 171 (1979). The State is not required to prove that its judgment was correct. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. at 463–64, 101 S.Ct. at 723–24.

■ Plaintiff challenges the State's decision to regulate only LEG to be used by public utilities. The State could reasonably have concluded that the carriage of LEG to and from public utilities would be in large quantities and with regularity thus posing a major and unique threat to public safety. The only regulations considered here, two-way radio, immediate reporting of accidents, illumination of headlights and vehicle inspection, could have been seen by the State as rational ways to seek to ensure public safety. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. at 466–68, 101 S.Ct. at 725–26. Whether these regulations in fact promote such safety is a legislative judgment and not a matter of judicial judgment. It must be said, however, that the regulations seem to tend clearly in the direction of public safety. The State is not required to address all of the problems inherent in hazardous materials transportation in order for its enactments to be given effect. *Id.* at 466–68, 101 S.Ct. at 725–26; *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). In order to provide regulations of other carriers for other purposes, the State would be required to alter its scheme of regulation of carriers by either expanding existing regulatory authority or creating new mechanisms to regulate. Limitation of regulation to carriers delivering LEG to public utilities fits the existing scheme of delegat-

522

ed authority. In light of these principles which underlie the rational basis standard, the regulations do not violate the Equal Protection Clause of the Fourteenth Amendment.

### INTERSTATE COMMERCE

■ Plaintiff's next contention is that the Rhode Island regulations are unconstitutional because they place an unreasonable burden on interstate commerce. The Commerce Clause, U.S.Const., Art. 1, § 8, cl. 3, which grants Congress the power "[t]o regulate Commerce . . . among the several States . . . ," prevents states from enacting laws which unduly burden commerce. *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. at 440, 98 S.Ct. at 793. States are not prevented from propounding laws which merely affect interstate commerce provided that the laws serve a legitimate state interest and they do not discriminate against interstate commerce. *Id.; H. P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 531–32, 69 S.Ct. 657, 661–62, 93 L.Ed. 865 (1949).

■ When legitimate state interests overlap with the national interests expressed by the Commerce Clause, and Congress has not acted, courts must make a "delicate adjustment" of the conflicting interests. *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. at 440, 98 S.Ct. at 793. To achieve this "delicate adjustment," the Supreme Court has articulated the following general rule:

"[W]here the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Huron Cement Co. v. Detroit*, 362 U.S. 440, 443 [80 S.Ct. 813, 815, 4 L.Ed.2d 852] . . . . If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities."

*Pike v. Bruce Church, Inc*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

■ Safety, especially highway safety, has long been recognized as a legitimate state concern. *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. at 443–44, 98 S.Ct. at 795–96. Consequently, the Supreme Court has been reluctant to invalidate state safety regulations because of the Commerce Clause. *Id.* at 443, 98 S.Ct. at 795. Such regulation will be overturned only if the effect of a "safety measure in reducing accidents and casualties is so slight or problematical" that it does not outweigh the national interest in the free flow of interstate commerce. *Southern Pacific Co. v. Arizona ex rel Sullivan*, 325 U.S. 761, 775–76, 65 S.Ct. 1515, 1523–24, 89 L.Ed. 1915 (1945).

The safety regulations considered here are the installation of a two-way radio, immediate accident notification to the State Police, vehicle inspection upon arrival at loading or unloading areas and traveling with headlights on while in Rhode Island. The immediate accident notification, vehicle inspection and headlight regulations have no real, obvious or apparent effect on interstate commerce and, therefore, do not violate the Commerce Clause.

The only regulation that might arguably burden interstate commerce is the requirement that a two-way radio be installed in all vehicles transporting LEG in Rhode Island. The two-way radio is to be utilized to notify the appropriate federal, state or local authorities in the event that an accident or mishap occurs within the State's borders. Plaintiff's main concern seems to be the expense of installing the radios and the fact that most, if not all, carriers transporting LEG in Rhode Island also are interstate carriers.

Plaintiff contends that the equipment necessary under the radio requirement would cost approximately $15,000 while the Defendant argues that a CB radio would satisfy the requirement. Paragraph four

does not mandate the type of equipment to be used by the carriers so a CB radio presumably would suffice. The additional cost of equipping interstate vehicles to comply with the Rhode Island regulation would not be prohibitive and cost, in this instance minimal, standing alone, does not violate the Commerce Clause. *Bibb v. Navajo Freight Lines*, 359 U.S. at 526, 79 S.Ct. at 966.

Furthermore, no evidence has been presented to this Court which indicates that Rhode Island's radio equipment standards conflict with the standards of another state. If another state banned the use of two-way radios entirely, Rhode Island's requirement would not unduly burden interstate commerce since it would simply be a matter of turning the equipment off. There is nothing inconsistent in this requirement when the number of interstate vehicles already having this equipment is considered.

The radio equipment requirement is to ensure that the motor carriers can notify the appropriate authorities immediately in the case of an accident or mishap. Although all officials may not have a two-way radio set up, the evidence indicated that at least Rhode Island State Police do. No other form of communication provides such immediate contact. The State's interest in quick notification to ensure public and highway safety cannot be promoted with a lesser impact on interstate activities and the impact is minimal. Thus, the requirement of a two-way radio does not violate the Commerce Clause.

## CONCLUSION

The regulations concerning the permit and application, the curfew, and the subsequent written notice of accidents are preempted by the HMTA. The remaining Rhode Island regulations are not unreasonable and their promulgation was authorized by the General Assembly. The radio notification requirement does not violate the due process clause's prescription against vagueness. The regulations concerning two-way radio, immediate reporting of accidents, illumination of headlights and vehicle inspec-

tion do not contravene the equal protection or commerce clauses. Judgment shall be entered accordingly permanently enjoining the Defendant Edward F. Burke, Administrator of the Rhode Island Division of Public Utilities and Carriers from enforcing the permit and application (Paragraphs II and III), the curfew (Paragraph V), and the subsequent written notice of accidents (Part of Paragraph VI) requirements of the Rhode Island regulations.

SO ORDERED.