KAREN LECRAFT HENDERSON, Circuit Judge,
concurring.
I join the majority opinion but write separately to express my view that the D.C. Act is likely preempted by the Hazardous Materials Transportation Act (HMTA) as well as by the FRSA.
A “major purpose of the HMTA was the development of ‘a uniform, national scheme of regulation’ regarding the transportation of hazardous materials.” Chlorine Inst., Inc. v. Calif. Highway Patrol, 29 F.3d 495, 496-97 (9th Cir.1994) (quoting S. Pac. Transp. v. Pub. Serv. Comm’n of Nev., 909 F.2d 352, 358 (9th Cir.1990)); see also Nat’l Tank Truck Carriers, Inc. v. Burke, 608 F.2d 819, 824 (1st Cir.1979) (addressing HMTA and stating: “[T]here is strong support for the notion that a primary Congressional purpose intended to be achieved through the legislation was to secure a general pattern of uniform national regulations.”).. It was to promote this goal- of uniform safety regulation by the federal agencies that the Congress enacted the HMTA preemption provision. See Colo. Pub. Util. Comm’n v. Harmon, 951 F.2d 1571, 1580 (10th Cir.1991) (“[I]n enacting new preemption standards, Congress expressly contemplated that the Secretary would employ his powers to achieve *675 safety by enhancing uniformity in the regulation of hazardous materials transportation.”)- The preemption provision states:
[U]nless authorized by another law of the United States, a requirement of a State, political subdivision of a State, or Indian tribe is preempted if
(1) complying with a requirement of the State, political .subdivision, or tribe and a requirement of this chapter, a regulation prescribed under this chapter, or a hazardous materials transportation security regulation or directive issued by the Secretary of Homeland Security is not possible; or
(2) the requirement of the State, political subdivision, or tribe, as • applied or enforced, is an obstacle to accomplishing and carrying out this chapter, a regulation prescribed under this chapter, or a hazardous materials transportation security, regulation or directive issued by the Secretary of Homeland Security.
49 U.S.C. § 5125(a). The D.C. Act’s ban on rail transport in the Capitol Exclusion Zone appears to be “an obstacle to accomplishing and carrying out ... a hazardous materials transportation security .regulation,” namely Department of Transportation regulation HM-232, for the same reason the majority opinion finds the D.C. Act is likely “incompatible with” HM-322 under the FRSA, see maj. op. at 673'. By prohibiting altogether transport of hazardous material through the Capitol Exclusion Zone in the District of Columbia, the D.C. Act circumscribes .the discretion that the regulation expressly confers on CSXT to develop its own individualized security plan under 49 C.F.R. § 172.800, including “[m]easures to address the assessed security risks of shipments of hazardous materials covered by the security plan en route from origin to destination,” id. § 172.802(a)(3). Cf. Chlorine Inst., Inc., supra (finding obstacle in California Highway Patrol regulations governing chlorine transport in state); Northern States Power Co. v. Prairie Island Mdewakanton Sioux Indian Comty., 991 F.2d 458 (8th Cir.1993) (finding obstacle in tribe’s requirement that shippers obtain special license for each shipment of radioactive substances crossing tribal lands); S. Pac., supra (finding obstacle in Nevada regulations requiring rail carrier to obtain annual permit before loading, unloading, transferring or storing hazardous material on railroad property within State). The D.C. Act therefore appears to constitute an obstacle to implementation of HM-232 and thus to be preempted under the HMTA, 49 U.S.C. § 5125(a)(2).